# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| TANYA LAFRENIER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> RECEIVABLES PERFORMANCE MANAGEMENT, LLC, <br><br> Defendant. | Case No.: 17-cv-534 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Ch. 421-427, Wis. Stats.

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337 and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Tanya Lafrenier is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him a debt allegedly incurred for personal, family or household purposes.

5. Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that she engaged in consumer credit transactions. Wis. Stat. § 421.301(10).

6. Defendant Receivables Performance Management, LLC ("RPM") is a debt collection agency with its principal offices located at 20816 44th Ave West, Lynnwood, WA 98036.

7. RPM is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. RPM is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. RPM is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

9. On or about November 17, 2016, RPM mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed "AT&T" with an account number ending in 1196. A copy of this letter is attached to this complaint as Exhibit A.

10. Upon information and belief, the alleged debt that RPM was attempting to collect was a personal cellular telephone service account, opened and used only for personal, family or household purposes.

11. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

12. Upon information and belief, Exhibit A is a form debt collection letter used by RPM to attempt to collect alleged debts.

13. Exhibit A contains the following settlement offer:

> Due to our client's desire to aid you in removing your account from collections, we are willing to accept 60% of the "total due" shown above as settlement in full. The remaining 40% of your outstanding balance will be forgiven if your payment of $428.05 is received on or before 12-02-16.

2

14. The letter purports to offer settling the debt for about 60% of the total balance of the alleged debt.

15. The settlement offer in Exhibit A falsely states or implies that the settlement offer is valid only if payment is made on or before December 2, 2016. (Exhibit A).

16. Upon information and belief, RPM had authority from AT&T to settle consumers' accounts for 60% of the amount owed, or less, at any time.

17. In fact, on or about January 12, 2017, RPM mailed another debt collection letter to Plaintiff regarding the same AT&T account ending in 1196. A copy of this letter is attached to this complaint as Exhibit B.

18. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

19. Upon information and belief, Exhibit B is a form debt collection letter used by RPM to attempt to collect alleged debts.

20. Exhibit B contains another settlement offer:

> Due to our client's desire to resolve this matter, we are willing to accept 50% of the "total due" shown above as settlement in full. The remaining 50% of your outstanding balance will be forgiven if your payment of $356.71 is received on or before 01-25-17.

21. The letter purports to offer settling the debt for about 50% of the total alleged debt.

22. The settlement offer in Exhibit B falsely states or implies that the settlement offer is valid only if payment is made on or before January 25, 2017. (Exhibit B).

23. Upon information and belief, RPM had authority from AT&T to settle consumers' accounts for 60% or 50% of the amount owed, or less, at any time.

3

24. Statements such as a settlement offer is a "limited time offer," or that the offer expires on a specific date, or that payments must be received by that date, are false and misleading because the same offer is, upon information and belief, available at any time.

25. Such false statements are material false statements, as they impart in the unsophisticated consumer, a false belief that he or she must hurry to take advantage of a limited-time opportunity, when in reality, there is no such time limit.

26. The Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following language: "We are not obligated to renew this offer." The word "obligated" is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775-76 (7th Cir. 2007).

27. RPM did not use the safe harbor language in Exhibit A or Exhibit B.

28. Upon information and belief, the deadline in Exhibit A and Exhibit B to respond to the settlement offer is a sham. There is no actual deadline. The sole purpose of the purported deadline is to impart in the consumer a false sense of urgency.

29. In addition, Exhibits A and B both state:

| Collection Fee: | $0.00 |

30. Exhibits A and B threaten to collect a collection fee.

31. Although the amount of the Collection Fee in Exhibit A is $0.00, the unsophisticated consumer interprets such references in collection letters letter as implying that a collection fee could be added to the debt in future letters. *See, eg. Tylke v. Diversified Adjustment*

4

*Serv.*, No. 14-cv-748; 2014 U.S. Dist. LEXIS 153281, *7 (E.D. Wis. Oct. 28, 2014) ("the inclusion of a collection fee, even one showing a balance of zero, could imply the future possibility of one.").

32. Upon information and belief, RPM does not actually add collection fees to consumer collection accounts with Wisconsin addresses.

33. Further, RPM could not add any "fees" or collection costs to Plaintiff's account.

34. Plaintiff's phone service contract with AT&T was for services, specifically AT&T wireless phone services, and involved agreements to render services and defer payment, under which finance charges, including but not limited to early termination fees, were or could be imposed, and which obligation was payable in installments. Such agreements are "consumer credit transactions" under the WCA, Wis. Stat. §§ 421-427.

35. Wis. Stat. § 421.301(10) defines a "consumer credit transaction":

> a consumer transaction between a merchant and a customer in which real or personal property, services or money is acquired on credit and the customer's obligation is payable in installments or for which credit a finance charge is or may be imposed, whether such transaction is pursuant to an open-end credit plan or is a transaction involving other than open-end credit. The term includes consumer credit sales, consumer loans, consumer leases and transactions pursuant to open-end credit plans.

36. Plaintiff's phone contract was for "services," namely cell phone service.

37. Plaintiff's cell phone service contract was payable in installments.

38. Under a cell phone service contract, the consumer incurs an obligation to pay the entire amount of the contract monthly, over the contract's term.

39. For example, under a cell phone service plan labeled "$50 per month" with a 2-year term, the consumer is obligated to pay, at a minimum, $1,200.00. The payments are made in 24 monthly installments of $50 each.

5

40. Moreover, upon information and belief, AT&T contracts include fees, including but not limited to early termination fees, that are considered finance charges under Wisconsin law.

41. The WCA specifically prohibits the attachment of collection fees and other "default charges" on consumer credit transactions, even if the fee is separately negotiated. Wis. Stat. § 422.413(1) provides:

> no term of a writing evidencing a consumer credit transaction may provide for any charges as a result of default by the customer other than reasonable expenses incurred in the disposition of collateral and such other charges as are specifically authorized by chs. 421 to 427.

42. Neither Wis. Stat. § 422.202, entitled "Additional charges," nor any other section of the WCA, lists collection costs or fees as a permissible amount a creditor may charge in connection with a consumer credit transaction.

43. Because cell phone service contracts are consumer credit transactions, Exhibit A falsely states or implies that RPM has a right to add a collection fee to consumers' alleged cell phone service debts.

44. Even if a provision of any agreement between Plaintiff and AT&T for the provision of cell services would purport to permit AT&T to impose a collection fee, the WCA prohibits such fees. Wis. Stat. § 421.106(1) ("Except as otherwise provided in chs. 421 to 427, a customer may not waive or agree to forego rights or benefits under chs. 421 to 427."); *See also Lox v. CDA, Ltd.*, 689 F.3d. 818 (7th Cir. 2012) (false representation that attorney fees would be added when they could not be, violated 1692e).

45. The only purpose of the "Collection Fee" line in Exhibits A and B is to threaten the consumer that additional fees may be added to the debt if the consumer does not pay right away. It is about harassment. It is an attempt to receive payment from a debtor, perhaps at the

6

expense of payment to another debt collector that is not using such false and deceptive tactics. Such conduct is an unfair and/or unconscionable method of collecting an alleged debt. *See Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1112 (7th Cir. 2008) (collection fee on cellular telephone accounts was neither authorized by agreement of the parties nor permitted by law).

46. Prevention of unscrupulous debt collection practices such as this one is part of the very purpose of the FDCPA. 15 U.S.C. § 1692(e) (it is part of the purpose of the FDCPA "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged").

47. Plaintiff was confused by Exhibit A and Exhibit B.

48. Plaintiff had to spend time and money investigating Exhibit A and Exhibit B and the consequences of any potential responses to Exhibit A and Exhibit B.

49. Plaintiff had to take time to obtain and meet with counsel, including travel to counsel's office by car and its related expenses (including but not limited to the cost of gasoline and mileage), to advise Plaintiff on the consequences of Exhibit A and Exhibit B.

50. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*,

7

No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

51. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

52. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

53. 15 U.S.C. § 1692e(2) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt, or the "false representation of…compensation which may be lawfully received by any debt collector for the collection" of an alleged debt.

54. 15 U.S.C. § 1692e(5) specifically prohibits threatening "to take any action that cannot legally be taken or that is not intended to be taken."

55. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt.

56. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

57. 15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

58. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

59. Wis. Stat. § 427.104(1)(L) also specifically prohibits a debt collector from "[t]hreaten[ing] action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

60. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

61. Exhibit A includes false statements to the effect that the settlement offer is for a limited time only.

62. Upon information and belief, the creditor and/or RPM would settle Plaintiff's and class members' debts at the offered discount and likely for less at any time, regardless of the supposed deadline.

63. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692f.

## COUNT II – FDCPA

64. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

9

65. RPM's threat to collect a "Collection Fee" in <u>Exhibits A and B</u> is a false, deceptive, and/or misleading representation to the unsophisticated consumer recipient.

66. RPM has no legal basis for collecting collection fees on Plaintiff's alleged cell phone service debt.

67. <u>Exhibit A</u> falsely represents that Defendant is lawfully entitled to collect a collection fee.

68. <u>Exhibit A</u> creates a false impression as to its authorization or approval for collecting a fee.

69. RPM does not actually add fees or collection costs to consumer accounts in Wisconsin. The purpose of the language is to imply that such charges could be added in the future.

70. RPM violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), and 1692e(10).

## COUNT III -- FDCPA

71. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

72. RPM's threat to add a collection fee when neither RPM nor AT&T is entitled to such a fee, is an unfair and/or unconscionable method by which to try and collect an alleged debt.

73. As these statements are threatening and/or confusing to the unsophisticated consumer recipient so as to falsely imply that the creditor is entitled to receive a collection fee, they are an unfair and/or unconscionable method for attempting to collect a debt.

74. RPM violated 15 U.S.C. §§ 1692f, and 1692f(1).

## COUNT IV -- WCA

75. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

76. Exhibit A claims, attempts, or threatens to enforce a right to a collection fee, even though Defendant knew or should have had reason to know that no such right existed at the time the letters were sent.

77. Even though Exhibit A includes a form field for collection costs and fees, RPM does not actually charge collection costs or fees. The purpose of the language is to imply that such charges could be added in the future.

78. RPM violated Wis. Stat. §§ 427.104(1)(j) and 427.104(1)(L).

## CLASS ALLEGATIONS

79. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent an initial collection letter in the form represented by Exhibit A to the complain in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between April 13, 2016, and April 13, 2017, inclusive, (e) that was not returned by the postal service.

80. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

81. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with 15 U.S.C. §§ 1692e, 1692f and Wis. Stat. § 427.104(1).

11

82. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

83. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

84. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

85. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: April 13, 2017

**ADEMI & O'REILLY, LLP**

By: s/ John D. Blythin
Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Denise L. Morris (SBN 1097911)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com
dmorris@ademilaw.com